DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of conviction and sentence entered by the Lucas County Court of Common Pleas after a jury found defendant-appellant, Kenneth L. Carter, guilty of felonious assault with a firearm specification. Appellant now challenges that conviction through the following assignments of error: *Page 2 
 {¶ 2} "I. The evidence was insufficient to support appellant's conviction; the conviction was against the manifest weight of the evidence.
 {¶ 3} "II. The cases of Richardson and Carter should have been severed; as such, Carter's trial counsel did not provide him with effective assistance of counsel by failing to move the trial court to sever his case from Richardson's on both the felonious assault and firearm specification charges."
 {¶ 4} On September 27, 2005, appellant and Jewett L. Richardson were indicted and charged with felonious assault. The indictment included a specification that the defendants had a firearm on or about their persons or under their control while committing the offense and displayed the firearm, brandished it, indicated that they possessed the firearm or used it to facilitate the offense. The indictment was filed as a result of a shooting incident that occurred in the early morning hours of September 10, 2005, at the American Petroleum ("AP") gas station at the corner of Monroe Street and Detroit Avenue in Toledo, Lucas County, Ohio. The victim of the shooting, Duane Preston, identified Richardson as the individual who shot him and appellant as the individual who supplied Richardson with the gun. The case proceeded to a jury trial on December 5, 2005, at which the following evidence was presented.
 {¶ 5} Duane Preston testified that on the evening of September 9 and into the early morning of September 10, 2005, he had been at Club Manos in Toledo drinking with his brother, Jasmine Hamilton, and his friends, Andre and Germane. The foursome then left the club and went to the AP station where a group of people, that included *Page 3 
members of his family, were congregating. Preston stated that they arrived at the AP shortly before 3:00 a.m. Preston testified that he has known appellant for four years and that he has a child with appellant's sister. When he arrived at the AP, appellant, who is also known as "Kimmy" Carter, was involved in an argument with a guy named Tony. Preston then ran over to them and tried to break up the argument. Preston testified that he then saw appellant go to his car, retrieve a handgun from under the seat and hold it at his side. Preston stated that he then told appellant to put the gun back in the car and that, "That's not called for." Appellant complied and put the gun back in the driver's side of his car. With that, appellant's passenger, whom Preston subsequently identified as Jewett Richardson, reinstigated the argument, at which Preston said "You don't got nothing to do with this." Preston testified that Richardson then told appellant to hand him the gun. Appellant then went to the car, retrieved the gun, and slid it across the trunk of the car to Richardson. Richardson grabbed the gun, shot it once into the air, and then began shooting at Preston. As Preston ran, one bullet flew past his ear and another hit him in the back of his left thigh, shattering his femur.
 {¶ 6} The first officer on the scene was Officer Kristi Eycke, who had arrived at the AP at around 2:45 a.m. to investigate another shooting in the area. She described the AP as an area where large crowds of people would congregate on weekends. Eycke testified that as she approached the station, she saw several people running near the pop machines. When she and her partner exited their vehicle, they heard people screaming "He's been shot." Eycke then went over to the area of the pop machines and found *Page 4 
Preston lying face down with what appeared to be a bullet wound to the back of his leg. Preston identified appellant as being involved in the shooting. Preston also indicated that another individual, whose name he did not know, was involved. He described that individual as being a very large man with long braids and gold teeth. After the scene was cleared, Eycke and other officers searched the area and found two shell casings. They also found a bullet hole in a soda pop machine at the station.
 {¶ 7} Preston was transported to the hospital where he was visited by Detective James Couch. Shortly after the shooting, officers at the scene of the shooting notified Couch of the name of a suspect, Jewett Richardson. Based on that information, Couch put together a standard six-picture photo array and went to the hospital to see Preston. Preston immediately identified Richardson as the person who shot him. Preston also told Couch that "Kimmy" Carter was involved in the shooting. Couch also testified that although several witnesses who were unrelated to Preston initially came forward with information about the shooting, those witnesses became uncooperative when he followed up with them during his investigation.
 {¶ 8} Approximately six days later, Detective Rick Molnar visited Preston at the hospital with another standard six-picture photo array. Preston immediately pointed to the person in the number two spot on the photo array, appellant, and identified him as the individual who gave the gun to the shooter.
 {¶ 9} In addition to Preston, three other individuals who were at the AP on the night of the shooting testified at the trial below: Dwaun Hicks, Preston's brother, Tiava *Page 5 
Preston, Preston's sister, and Jessica Skipper, Preston's girlfriend. They were all familiar with appellant and identified him in court as the individual who supplied the gun to the shooter moments before Preston was shot. In addition, Tiava and Jessica also testified to witnessing Preston's attempts to break up an argument between appellant and another individual. Tiava further testified that she heard Richardson tell appellant to give him the gun and then saw appellant reach into the car, get a gun and slide the gun across the trunk of the car to Richardson. Tiava then saw Richardson grab the gun and shoot it once into the air before he began shooting at Preston. Jessica also saw Preston and Richardson exchange words and saw appellant slide the gun across the trunk of his car to Richardson before Richardson started shooting.
 {¶ 10} At the conclusion of the trial, the jury came back with verdicts finding appellant and Richardson guilty of felonious assault and finding that the defendants did display, brandish, indicate possession of or use a firearm in the commission of the offense. Appellant was subsequently sentenced to seven years in prison on the felonious assault conviction and an additional consecutive term of three years on the firearm specification. It is from that judgment that appellant now appeals.
 {¶ 11} In his first assignment of error, appellant asserts that the verdict was not supported by sufficient evidence and was against the manifest weight of the evidence.
 {¶ 12} The Supreme Court of Ohio has ruled that "[t]he legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." State v. Thompkins (1997),78 Ohio St.3d 380, 386. *Page 6 
"Sufficiency" applies to a question of law as to whether the evidence is legally adequate to support a jury verdict as to all elements of a crime. Id. Upon review of the sufficiency of the evidence to support a criminal conviction, an appellate court must examine "the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. Under a manifest weight standard, however, an appellate court sits as a "thirteenth juror" and may disagree with the fact finder's resolution of the conflicting testimony.Thompkins, supra at 387. The appellate court, "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weights heavily against conviction.'" Id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 13} Appellant was convicted of felonious assault with a firearm specification in violation of R.C. 2903.11(A)(2) and 2941.145. R.C.2903.11 provides in relevant part:
 {¶ 14} "(A) No person shall knowingly do either of the following:
 {¶ 15} "* * * *Page 7 
 {¶ 16} "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."
 {¶ 17} R.C. 2941.145, the firearm specification statute, provides for the imposition of a three-year mandatory prison term where an offender is found to have had a firearm on or about the offender's person or under his control while committing the offense, and displayed the firearm, brandished it, indicated that he possessed it or used it to facilitate the offense. Finally, in charging the jury, the lower court provided them with a complicity instruction. R.C. 2923.03 provides in relevant part:
 {¶ 18} "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
 {¶ 19} "* * *
 {¶ 20} "(2) Aid or abet another in committing the offense;
 {¶ 21} "* * *
 {¶ 22} "(F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principle offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense."
 {¶ 23} Upon a review of the evidence submitted at the trial below, we must conclude that there was sufficient evidence to find appellant guilty of felonious assault with a firearm specification and that the conviction was not against the manifest weight of the evidence. In addition to the victim, Dwaun Hicks, Tiava Preston and Jessica *Page 8 
Skipper all testified that they saw appellant slide the gun across the trunk of the car to Richardson. In addition, the victim and Tiava Preston heard Richardson tell appellant to give him the gun. This was after Richardson and the victim had engaged in a verbal argument. Under these circumstances, the jury could conclude beyond a reasonable doubt that appellant was complicit in knowingly causing physical harm to another by means of a deadly weapon. Accordingly, we cannot say that the conviction was unsupported by sufficient evidence or was against the manifest weight of the evidence, and the first assignment of error is not well-taken.
 {¶ 24} In his second assignment of error, appellant asserts that he was denied the effective assistance of counsel at the trial below. Specifically, appellant contends that his trial counsel was ineffective by failing to move to sever his case from the case of his co-defendant, Jewett Richardson.
 {¶ 25} The standard for determining whether a trial attorney was ineffective requires an appellant to show: (1) that the trial attorney made errors so egregious that the trial attorney was not functioning as the "counsel" guaranteed under the Sixth Amendment, and (2) that the deficient performance prejudiced appellant's defense. Strickland v.Washington (1984), 466 U.S. 668, 686-687. In essence, an appellant must show that his trial, due to his attorney's ineffectiveness, was so demonstrably unfair that there is a reasonable probability that the result would have been different absent his attorney's deficient performance. Id. at 693. *Page 9 
 {¶ 26} Crim.R. 8(B) provides for the joinder of defendants in pertinent part as follows: "Two or more defendants may be charged in the same indictment, information or complaint if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses, or in the same course of criminal conduct." R.C. 2945.13 then provides that "[w]hen two or more persons are jointly indicted for a felony * * * they shall be tried jointly unless the court, for good cause shown on application therefor * * * orders one or more of said defendants to be tried separately." Joinder is favored because it conserves judicial resources and minimizes the possibility of incongruous results. State v.Schiebel (1990), 55 Ohio St.3d 71, 86-87, citing State v. Hamblin
(1988), 37 Ohio St.3d 153, 157-158. The decision of whether or not to sever properly joined offenses or defendants rests in the sound discretion of the trial court, Hamblin, supra at 158, reversed on other grounds in Hamblin v. Mitchell (C.A.6, 2003), 354 F.3d 482, and will not be reversed on appeal absent an abuse of discretion. State v. Lott
(1990), 51 Ohio St.3d 160, 163.
 {¶ 27} Crim.R. 14, however, provides that if a defendant is prejudiced by the joinder of co-defendants, the court shall grant a severance of defendants. The defendant has the burden of affirmatively demonstrating that his rights were prejudiced by the joinder. Lott, supra at 163.
 {¶ 28} Appellant asserts that testimony against Richardson served to prejudice the jury against him and that the jury may have convicted him simply because of his association with Richardson. *Page 10 
 {¶ 29} Upon a review of the record, we must conclude that the charges against appellant and Richardson were properly tried together. The evidence established that they participated in the same course of conduct that resulted in the shooting of Preston. As such, the same evidence that was presented in the trial against Richardson would have been presented in a separate trial against appellant. The two defendants acted in concert to commit the felonious assault of Preston and appellant has failed to demonstrate that his rights were prejudiced by the joinder.
 {¶ 30} Accordingly, appellant's trial counsel was not ineffective for failing to move to sever the two cases and the second assignment of error is not well-taken.
 {¶ 31} On consideration whereof, the court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the court costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4. *Page 11 
Mark L. Pietrykowski, P.J., Arlene Singer, J., Thomas J. Osowik, J., CONCUR. *Page 1